**2026 BNH 002**                    **Note:  This is an unreported opinion.**

---

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                    Case No. 24-10379-KB
                                                          Chapter 13
Thomas Anthony Frangos,
            Debtors.


Thomas Anthony Frangos *et al*,
            Plaintiffs.
v.                                                        Adv. No. 24-1010-KB

Jonathan Flagg *et al*,
            Defendants.

*Richard N. Gottlieb*
*Law Offices of Richard N. Gottlieb*
*Terrie Harman*
*Harman Law Offices*
*Kathleen McKenzie*
*Attorneys for Thomas Anthony Frangos, Frances Frangos, and the Frances Ann Frangos*
*Revocable Trust of 2002, Plaintiff*

*Jonathan M. Flagg*
*Flagg Law PLLC*
*Attorney for Flagg Law PLLC and Bank of New York Mellon*


## **MEMORANDUM OPINION**

## I.    INTRODUCTION

One day before a scheduled trial in state court was set to commence, the Plaintiff Thomas

Anthony Frangos ("**Mr. Frangos**") filed the underlying bankruptcy case. Opposing counsel

Jonathan Flagg ("**Attorney Flagg**") asked the Plaintiff's bankruptcy counsel to assent to relief

from the automatic stay for the trial to proceed, which was declined. While the state court

received notice of the bankruptcy filing, it chose to proceed with the trial because two non-debtor

parties remained: Frances Frangos and a trust in her name. Attorney Flagg and state court counsel for Mr. Frangos argued whether the codebtor stay applied, both to state court staff and with each other. Attorney Flagg may have threatened to subpoena Mr. Frangos if he did not appear for the trial, but that is not clear. On the morning of the trial, Attorney Flagg argued that the codebtor stay did not apply, but ultimately persuaded the presiding judge in chambers to continue the trial to first obtain relief from stay in the bankruptcy court. The Plaintiffs began drafting a complaint to commence this proceeding the same day. On these (abridged) facts, the Plaintiffs assert that the Defendants violated the automatic stay and codebtor stay, and claim damages from emotional distress, lost wages and travel expenses and $125,000 or more in attorneys' fees.[1] The Plaintiffs also request punitive damages.

The Court concludes that the Plaintiffs failed to show by a preponderance of the evidence that the Defendants violated the automatic stay or codebtor stay. Because this Court concludes that a violation of the automatic stay or codebtor stay did not occur, the Plaintiffs are not entitled to damages. Nevertheless, because a significant amount of time during the trial was dedicated to the issue of damages, the Court deems to appropriate to address them here. The Court will enter judgment in favor of the Defendants and against the Plaintiffs.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire. Venue and jurisdiction are properly with this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2).

---

[1] The total amount of attorneys' fees incurred by the Plaintiffs was to be determined after the trial in this case upon request of this Court, but evidence reflected that certain attorneys' fees totaled at least $125,000.

## II.    BACKGROUND

### A.    <u>The Relevant Parties and the Bankruptcy Case</u>

1.      The Plaintiffs Thomas A. Frangos and Frances A. Frangos ("**Mrs. Frangos**") are individuals who reside at 33 Gosport Road, Portsmouth, NH 03801. ECF No. 15 ¶¶ 11–12. The Plaintiff Frances Ann Frangos 2002 Revocable Trust (the "**Trust**" and with Mr. and Mrs. Frangos, the "**Plaintiffs**") is a trust established by Mrs. Frangos on March 12, 2002. *Id.* ¶ 17.

2.      The Defendant Jonathan Flagg is a New Hampshire attorney with a business address of 93 Middle Street, Portsmouth, New Hampshire 03801. *Id.* ¶ 13. The Defendant Flagg Law is a professional limited liability company operated by Attorney Flagg and located at 93 Middle Street, Portsmouth, New Hampshire. *Id.* ¶ 14. The Defendant Bank of New York Mellon ("**BONY**"), trustee for Certificate Holders of CWABS, Inc., Asset Backed Certificate, Series 2005-AB2, is a New York corporation with a mailing address of 101 Barclay Street 4W, New York, New York 10286. *Id.* ¶ 15.

3.      Mr. Frangos filed the underlying bankruptcy case on May 30, 2024 (Case No. 24-10379-KB) (the "**Bankruptcy Case**"). BONY moved on June 4, 2024 for relief from the automatic stay to proceed with a state court trial that was previously scheduled for May 31, 2024. Bankruptcy Case ECF Nos. 12, 13. The Court granted relief from the automatic stay to BONY on July 3, 2024. *Id.* ECF No. 28. The post-petition events of May 30 and 31, 2024 are the entire basis for this proceeding.

### B.    <u>The Adversary Proceeding</u>

4.      On August 7, 2024, the Plaintiffs filed a complaint against the Defendants commencing this adversary proceeding. ECF No. 1. The Plaintiffs filed an amended complaint on October 1, 2024 (the "**Complaint**"). ECF No. 15.

5.     According to the Complaint, Mr. Frangos purchased real property at 33 Gosport Road, Portsmouth, New Hampshire (the "**Property**") on March 14, 2002. Compl. ¶ 23. Mr. and Mrs. Frangos later transferred the Property to the Trust on April 1, 2003, where it allegedly remains. *Id.* ¶¶ 24–27. Mr. Frangos executed a $599,000 promissory note in favor of BONY on April 25, 2005, and executed a mortgage against the Property. *Id.* ¶¶ 28–29, 71.

6.     BONY filed an action in Rockingham County Superior Court, New Hampshire (the "**Superior Court**") on May 16, 2022 asserting claims against the Plaintiffs for unjust enrichment, quantum meruit, equitable subrogation, reformation of mortgage and deed and to quiet title (the "**State Court Action**"). *Id.*¶ 32. The State Court Action was set for trial on May 31, 2024 at 9:00 a.m. *Id.* ¶ 34. Mr. Frangos was represented by Attorney Terrie Harman, and Mrs. Frangos and the Trust were represented by Attorney Vincent Marconi. *Id.* ¶¶ 35–36.

7.     Mr. Frangos filed the Bankruptcy Case on May 30, 2024, the day before trial in the State Court Action. *Id.* ¶ 38. Attorney Kathleen McKenzie, bankruptcy counsel for Mr. Frangos, sent Attorney Flagg a text message screenshot of Mr. Frangos's bankruptcy filing approximately ten minutes after the filing. *Id.* ¶ 39. Five minutes later, Attorney McKenzie emailed the screenshot of Mr. Frangos's bankruptcy filing to Attorneys Flagg, Harman, and Marconi, as well as Patrice Touma, Clerk of the Court for the Superior Court ("**Ms. Touma**"), and other Superior Court staff. *Id.* ¶ 40. A suggestion of bankruptcy was filed with the Superior Court later that day. *Id.* ¶ 42. Attorney Flagg acknowledged the bankruptcy filing that day and asked whether Attorney McKenzie would consent to relief from the automatic stay. *Id.* ¶ 41.

8.     Ms. Touma responded to Attorney McKenzie's e-mail by stating that because only Mr. Frangos filed bankruptcy, the automatic stay did not apply to Ms. Frangos or the Trust, and

the State Court Action trial would go forward. *Id.* ¶ 43. Attorneys Harman and McKenzie responded by e-mail that the 11 U.S.C. § 1301 co-debtor stay applied. *Id.* ¶ 44.

9.     Attorney Flagg replied to Attorneys Harman and McKenzie that the State Court Action was unrelated to Mr. Frangos's bankruptcy estate, that he would be at trial the next day with his witnesses and that the State Court Action judge would have to decide whether the stay applied. *Id.* ¶ 45. Attorney Flagg further stated: "Mrs. Frangos is not a co-debtor. She did not sign the note." *Id.* ¶ 46. On May 30, 2024, Attorneys Harman and McKenzie held a conference call with Attorney Flagg in which they stated: (1) proceeding with trial in the State Court Action would violate the automatic stay; (2) bankruptcy courts have exclusive jurisdiction to determine whether the automatic stay applies; (3) Attorney Flagg proceeding with trial in the State Court Action would be a willful stay violation; (4) Attorney Flagg's actual knowledge of the bankruptcy and acknowledgment of the stay by asking for assent to relief from stay potentially exposed him to punitive damages; and (5) neither Mr. Frangos or Attorneys Harman and McKenzie would appear at trial the next day. *Id.* ¶ 47. Attorney Flagg allegedly demanded that Mr. Frangos appear at trial and indicated that "his deposition transcript would simply be read into the evidence in lieu of live testimony" if he did not appear. *Id.* ¶¶ 48–49.

10.     On May 31, 2024 at 9:00 a.m., Judge David Ruoff held a hearing regarding the automatics stay's application to the State Court Action. *Id.* ¶ 50. Mrs. Frangos was present in the courtroom with Attorney Marconi, while Mr. Frangos was in the Superior Court parking lot "in the event that Judge Ruoff made an order requiring his immediate presence". *Id.* ¶¶ 51–52. The Complaint alleges that Judge Ruoff "acknowledged that proceeding with the hearing would subject" Attorney Flagg and BONY "to sanctions for violation of the automatic stay if in fact the Stay applied". *Id.* ¶ 53. Attorney Flagg "repeatedly argued in favor of moving forward with the

trial" and "repeatedly argued that neither the automatic stay nor the co-debtor stay applied". *Id.*
¶¶ 54–55. Judge Ruoff stated that the trial would commence at 10:00 a.m. that day. *Id.* ¶ 59.

11.     At 9:56 a.m., Attorney Flagg asked Attorney McKenzie for her assent to an
expedited hearing on a motion for relief from stay in the bankruptcy court, which Attorney
McKenzie declined to give. *Id.* ¶ 60. Attorneys Flagg and Marconi later "agreed that a short
continuance would be in order." *Id.* ¶ 61. Judge Ruoff then issued a two page order concluding
that: (1) the automatic stay did not apply to the State Court Action; (2) if the bankruptcy court
disagreed, any trial would be void; and (3) the trial would be continued to July 19, 2024 for
Defendant BONY to seek relief from stay in the bankruptcy court. *Id.* ¶ 62.

12.     Based on these allegations, the Complaint includes two counts against the
Defendants for willful violation of the automatic stay under 11 U.S.C. §§ 362(a)(1) and (k), and
willful violation of the co-debtor stay under 11 U.S.C. § 1301. Compl. ¶¶ 63–110. The Plaintiffs
allege that they lost wages and incurred travel expenses, attorneys' fees, and emotional distress
as a result of the Defendants' alleged stay violations, and request damages, punitive damages,
and attorneys' fees. *Id.*

13.     The Defendants answered the Complaint on January 30, 2025. ECF No. 37. The
Defendants largely admit the Complaint's allegations, with the following exceptions: they deny
that Attorney Flagg demanded Mr. Frangos appear at trial during the May 30, 2024 conference
call between Attorneys Flagg, Harman and McKenzie; deny allegations regarding the mortgage's
validity; deny that Attorney Flagg "personally acknowledged" the automatic stay; and deny that
Mr. and Mrs. Frangos lost wages or incurred travel expenses, attorneys' fees, or emotional
distress from the Defendants' alleged conduct. *Id.* ¶ 2; *see* Compl. ¶¶ 29–31, 48, 72–74, 80, 86–
96, 103–110.

14.     The Plaintiffs moved for partial summary judgment on June 30, 2025 requesting that the Court find the Defendants liable for violations of the automatic stay and co-debtor stay. ECF No. 74. The Defendants objected on July 28, 2025. ECF No. 80. The Court denied the motion for summary judgment, primarily relying on a transcript of the May 31, 2024 hearing in the State Court Action. *See* ECF No. 33. At that hearing, Attorney Flagg stated: "I'm prepared to go forward. I have no intention of violating the automatic stay. That's a very serious thing. I don't want to violate the automatic stay . . . ." *Id.* at 10:2–10. Later, after a recess where Attorneys Flagg and Marconi met with Judge Ruoff in chambers, Judge Ruoff stated: "Out of an abundance of caution, [Attorney Flagg] has requested a short continuance so that it may seek relief/review from the bankruptcy court about whether the automatic stay applies to the case. This Court was willing to proceed with the trial on the merits on today's date, but agrees that a more prudent approach would be to allow the bankruptcy court to review the issue." *Id.* at 22:20–23:2. The Court concluded that it could not find that the Defendants willfully violated the automatic stay through their actions at the May 31, 2024 hearing because: (1) the Superior Court set the hearing, not the Defendants; and (2) while Attorney Flagg stated he was prepared to go forward, he convinced Judge Ruoff to continue the matter, and did not request testimony from the Frangos or ask that their deposition transcripts be read into evidence. The Court left open whether statements made by Attorney Flagg in chambers with Judge Ruoff could support liability.

15.     This Court held a bench trial regarding the Complaint on November 17, 2025. The Plaintiffs and Defendants submitted post-trial briefs which this Court has reviewed and considered. *See* ECF Nos. 108-109.

C.    **The Plaintiffs' Case in Chief**

1.    **Attorney Harman**

16.    The Plaintiffs' first witness at trial was Attorney Harman, Mr. Frangos's counsel in the State Court Action. Trial Tr. 23:10–16. According to Attorney Harman, she informed Attorney Flagg by e-mail in the spring of 2024 that Mr. Frangos would be filing a bankruptcy case. *Id.* 23:22–24:12. When Mr. Frangos filed the Bankruptcy Case on May 30, 2024, Attorney McKenzie informed Attorney Flagg of the filing. *Id.* 25:16–20. Attorney Harman also discussed the Bankruptcy Case with Attorney Flagg that day, by both e-mail and conference call with Attorney McKenzie. *Id.* 25:25–26:23.

17.    On the conference call, Attorney Harman informed Attorney Flagg that the May 31, 2024 trial in the State Court Action would be stayed by the automatic stay in the Bankruptcy Case. *Id.* 26:24–27:3. Attorney Flagg "pushed back", disagreeing that the trial was stayed because the Trust was not a co-debtor of Mr. Frangos, and requesting that Attorney Harman stipulate that the Trust was a co-debtor. *Id.* 27:3–11. Attorney Harman refused and stated that Attorney Flagg had two options: "take a voluntary non-suit without prejudice or [] simply continue the trial and get a comfort order from the Bankruptcy Court to be able to go forward . . . with your trial". *Id.* 27:14–20.

18.    Attorney Harman then stated that the trial is "not going forward. We're not attending. The bankruptcy stay applies. Don't go forward." *Id.* 28:6–8. Attorney Flagg then "got pushy", stating that he would "subpoena your client. I'll subpoena Tom Frangos and I have his deposition transcript. I'll read his deposition transcript into the record." *Id.* 28:8–11. Attorney Harman informed Attorney Flagg that proceeding with the trial with knowledge of the

Bankruptcy Case was "lining [him] up for punitive damages." *Id.* 28:13–21. Attorney Flagg's response was "not collaborative". *Id.* 28:22–29:1.

19.     The Plaintiffs decided to have Mr. Frangos take Mrs. Frangos to the Superior Court on May 31, 2024, where Mr. Frangos would wait in the parking lot, as he "didn't need to go because of the automatic stay" but would "be available in case something else came up that [Attorney Harman] couldn't predict." *Id.* 29:7–14, 21–24. Attorney Harman spoke to Attorney Marconi, who stated that he and Attorney Flagg "talked and the trial is off for tomorrow." *Id.* 29:14–18. According to Attorney Harman, Attorney Marconi "wasn't prepared" for trial because "he knew there was going to be a bankruptcy", but stated he "better go anyway and take [Mrs. Frangos]." *Id.* 29:25–30:13.

### 2.     Attorney McKenzie

20.     The Plaintiffs' second witness was Attorney McKenzie. Attorney McKenzie testified that initial discussions regarding preparing a Chapter 13 bankruptcy petition for Mr. Frangos began in "early May of 2024." *Id.* 67:4–8. Attorney McKenzie filed the Bankruptcy Case before 9:00 a.m. on May 30, 2024, after which she texted Attorney Flagg "with a screenshot of the notice of bankruptcy case filing". *Id.* 68:17–25. Attorney McKenzie later prepared a suggestion of bankruptcy for the Superior Court. *Id.* 69:1–4.

21.     Attorney McKenzie participated in the afternoon conference call with Attorneys Harman and Flagg. *Id.* 69:15–19. Attorney Flagg "changed course" regarding "what he thought the bankruptcy filing meant" during the afternoon call. *Id.* 69:20–70:4. While Attorney Flagg responded to the morning text message with a request to assent to relief from the automatic stay, during the call later that day he "seemed pretty exasperated" at the Bankruptcy Case "stopping the trial." *Id.* 70:5–20. Attorney Flagg "thought that Mr. Frangos would not appear" and

"indicated that [] he'll just read Mr. Frangos's deposition into the record", meaning that he "won't have a chance to testify live if he doesn't appear." *Id.* 70:15–25. At the "very tail end of the call" Attorney Flagg "made some remark about, well, now he has to go subpoena a defendant" which Attorney McKenzie believed meant Mr. Frangos. *Id.* 71:1–6. Attorney McKenzie recalled that Attorney Harman "plead[ed] with [Attorney Flagg] not to proceed", stating that, "You're playing with fire. Don't do this." *Id.* 71:7–17. Attorney Harman suggested that Attorney Flagg should instead "take a voluntary non-suit" to which he "kind of chuckled and said, 'Oh, [Attorney Harman], you'd love that, wouldn't you?'" *Id.* 74:9–17.

22.     Attorney McKenzie recalled receiving e-mail communications from Superior Court staff indicating that they were reviewing the suggestion of bankruptcy, which only appeared to apply to Mr. Frangos. *Id.* 72:12–73:1. Attorney McKenzie responded to that e-mail to state "that the co-debtor stay did apply" to Mrs. Frangos. *Id.* 73:2–10. The e-mail chain included her, Attorneys Harman, Flagg, and Marconi, and three Superior Court staff members. *Id.* 73:13–20; Pl. Exs. 2–3. Ms. Touma later replied that: "As of right now, the bench trial will remain on the docket as scheduled. The parties should be prepared to argue whether the Notice of Bankruptcy stays the case given Attorney Flagg's position outlined in his previous email. After the hearing, the Judge will determine if the case will be stayed. If not, the case will proceed to bench trial." ECF No. 29 at 3.[2]

23.     Following the hearing on May 31, 2024, Attorney Flagg texted Attorney McKenzie asking for consent to expedited relief from the automatic stay. Trial Tr. 74:18–22. Attorney McKenzie believed this text was sent while Attorneys Flagg and Marconi were having

---

[2] This e-mail was filed as a screenshot, which the parties agreed at trial would be submitted as Joint Exhibit 1. Trial Tr. 104:12–106:20.

an in-chambers discussion with Judge Ruoff while the hearing was in recess. *Id.* 74:23–75:8.

Attorney McKenzie declined to assent. *Id.* 75:9–12.

24.     During cross-examination, Attorney Flagg directed Attorney McKenzie to page 73

of Defendants' Exhibit 2. Trial Tr. 92:1–2. Attorney McKenzie described the exhibit as "an

interoffice memorandum" between Attorney Harman and Tim Chevalier, a former coworker of

hers. The exhibit is titled "Evaluation of Potential Stay Violations by the Superior Court" and

dated May 31, 2024, the day of the trial in the State Court Action. Def. Ex. 2 at 73. The Plaintiffs

stipulated that Mr. Chevalier "did a memorandum, which is a draft – an outline of a draft of the

complaint for violation of the automatic stay." Trial Tr. 93:5–8. Attorney McKenzie testified that,

to her knowledge, no attorney for the Plaintiffs had "discussed damages with Mr. Frangos" as of

May 31, 2024. *Id.* 93:11–14.

### 3.    <u>Mr. Frangos</u>

25.     The Plaintiffs called Mr. Frangos as their third witness. Mr. Frangos testified that

he manages "construction sites for his own business." Trial Tr. 108:4–7. Mr. Frangos does not

receive regular paychecks, but rather is "compensated at the very end of the job" "based upon the

profitability of the job itself." *Id.* 109:6–12. He receives 60% of the proceeds from his jobs,

while his investors receive 40%.[3] *Id.* 110:11–16. The Court noted on the record that Mr. Frangos

indicated in his Schedule I, under penalty of perjury, that he receives $1,000 per month. *Id.*

111:11–14; *see* Bankruptcy Case ECF No. 21 at 26.

26.     As of May 2024, Mr. Frangos had started "a four-unit townhouse in Portsmouth"

and finished "a restaurant in Exeter" and "a luxury house in Maine." Trial Tr. 109:1–5. Two of

---

[3] The transcript reflects that Mr. Frangos testified his investors receive "50 percent" of the proceeds, for a total of
110%. Trial Tr. 110:15–16. The Court assumes either that Mr. Frangos stated this figure in error, or that his answer
was transcribed incorrectly. *See id.* 115:19–23.

the townhouse units have sold for $1,650,000 and $1,750,000; if the remaining units sold for similar amounts, Mr. Frangos estimated total gross sales of $6,800,000 for that project. After paying off a $4,150,000 note, he estimated earning $1,200,000 from the project. *Id.* 109:13–110:6–10, 115:11–18.

27.      However, if a job is delayed "for any reason," his investors can demand a 50/50 split instead. *Id.* 115:19–23. According to Mr. Frangos, the townhouse job was delayed by him waiting in the Superior Court parking lot during the morning on May 31, 2024. *Id.* 116:1–9. If he is "not there and [] can't supervise somebody, they may decide they can't do the work in a day. So they leave and go off on another job because these people are subcontractors, not employees. So even though they miss one day I might not see them again for a week." *Id.* 116:24–117:12. Mr. Frangos estimated that his lost wages for May 31, 2024 were $6,000, calculated by dividing the $1,200,000 expected return from the project by 200 days, which he estimated was the normal time that the townhouse job would take. *Id.* 118:7–23.

28.      According to Mr. Frangos, on the day of the scheduled trial, Mrs. Frangos "was very nervous" and "doesn't drive when she's nervous" so Mr. Frangos had to drive her to the May 31, 2024 hearing. *Id.* 118:24–119:8. As for Mr. Frangos, he testified that on the drive to the Superior Court: "I was angry. I was livid." *Id.* 119:9–11. He did not express that anger to Mrs. Frangos because "I don't even have to say a word. She knows." *Id.* 119:12–14. After the May 31, 2024 hearing concluded, the Frangos's may have stopped "at Market Basket to get something" and then went home. *Id.* 122:6–10. They continue to be angry about the hearing. *Id.* 122:16–123:15.

29.      When Mr. Frangos was asked whether he had any emotional distress on May 30, 2024, he stated: "I was angry, so if you consider anger emotional distress, then I did." *Id.*

140:11–14. In his March 5, 2025 deposition in this proceeding, Attorney Flagg asked Mr. Frangos whether he was worried on May 30, 2024; Mr. Frangos replied: "I don't worry about anything. It doesn't matter because I was, I've been on the edge of death so many times I don't worry about anything." *Id.* 140:15–141:7; Def. Ex. 2 at 44:23–45:3. Mr. Frangos admitted he did not recall this proceeding being filed and did not see the original complaint before it was filed. Trial Tr. 141:8–16. Mr. Frangos was asked whether he could have kept working after the May 31, 2024 hearing and he stated: "Possibly I did. I just don't recall." *Id.* 153:8–19.

### 4. <u>Attorney Marconi</u>

30.     The Plaintiffs fourth witness was Attorney Marconi, State Court Action counsel for Mrs. Frangos and the Trust. Attorney Marconi testified that, while the State Court Action was set for trial in May, he did not prepare for trial "in the ordinary course" because he understood that Mr. Frangos was going to file the Bankruptcy Case. *Id.* 126:17–127:8. Attorney Marconi spoke with Attorney Flagg by phone the afternoon of May 30, 2024, after receiving the suggestion of bankruptcy. *Id.* 127:24–128:10. Attorney Flagg "said something to the extent of, 'Well, I guess our weekend is starting up,'" which Attorney Marconi believed to mean the State Court Action trial would be continued. *Id.* 128:14–22.

31.     After that call, Attorney Marconi received an e-mail from the Superior Court Clerk's office indicating that the trial would proceed on May 31, 2024 with the non-debtor defendants. *Id.* 129:6–11. Attorney Marconi called Attorney Harman's office, which explained their position that the automatic stay and co-debtor stay applied to Mrs. Frangos and the Trust. *Id.* 129:12–18. Attorney Marconi then called Mrs. Frangos in the evening, indicating that they would need to be present for the trial. *Id.* 129:19–130:4.

32.     Attorney Marconi testified that Mrs. Frangos was "[a]nxious" and "[f]airly nervous" at the May 31, 2024 hearing. *Id.* 131:15–20. He did not observe or recall Mrs. Frangos crying. *Id.* 131:21–24.

33.     At the hearing, Attorney Marconi argued that the automatic stay and co-debtor stay applied to Mrs. Frangos and the Trust. *Id.* 132:14–20. Judge Ruoff "did not agree". *Id.* 132:20–21. Judge Ruoff then recessed the hearing until 10:00 a.m. *Id.* 132:22–133:2. During the recess, Attorney Flagg met with Attorney Marconi and "suggested that we continue the case. Abundance of caution, something to that effect. And of course, I said, we'd assent." *Id.* 133:3–21; *see* 138:11–14. Attorneys Flagg and Marconi then met with Judge Ruoff in his chambers to discuss a motion to continue the hearing drafted and filed by Attorney Flagg. *Id.* 133:22–134:15.

### 5.     Mrs. Frangos

34.     The Plaintiffs' fifth witness was Mrs. Frangos. Mrs. Frangos stated that she had three jobs in the period around May 2024: cleaning homes, working in a lingerie store and working in a hotel during the summer. *Id.* 156:18–24. Mrs. Frangos could not recall what job she would have worked on May 31, 2024, or how many jobs she would have worked that day. *Id.* 156:25–157:3, 20–24. She estimated her lost wages at $300. *Id.* 158:4–11.

35.     Mrs. Frangos testified that, in her thirty-seven years of marriage to Mr. Frangos, she had never struck her husband, except for "one night" after the trial. *Id.* 158:17–25, 163:20–25. When Attorney Marconi informed Mrs. Frangos that she would have to go to the Superior Court on May 31, 2024, she "was very upset. I was very angry. I was not happy with my husband that I had to go to court. I didn't sleep well that night. "*Id.* 161:11–22. According to her, "I was angry that I had to go and I was told I didn't have to go. I was angry that I was told I had to go and my husband didn't have to go that day." *Id.* 161:23–162:2. Specifically, she was "upset" at

14

being "forced to actually go and sit in court while" Mr. Frangos "would just be sitting in the parking lot." *Id.* 162:3–6. Mrs. Frangos was "very angry" and "very anxious" at the hearing, and since the hearing hasn't "been sleeping at night" and cries "for no reason." *Id.* 163:6–10, 20–25.

36.     At her March 5, 2025 deposition, Mrs. Frangos testified that she did not recall either May 30 or May 31, 2024. *Id.* 172:11–173:5; Def. Ex. B at 7:2–18. On cross-examination, Mrs. Frangos admitted she does not have a therapist or psychologist and she did not call her doctor on May 30 or 31, 2024. Trial Tr. 182:21–183:3.

### D.     The Defendants' Case in Chief

37.     The Defendants' first witness was Attorney McKenzie. In a January 29, 2025 e-mail, she said to Mr. Frangos and Attorneys Harman and Gottlieb that, "Atty Flagg was arguing that he doesn't understand what emotional distress there could be, so we are going to need to nail that down with both Mr. & Mrs. Frangos." Trial Tr. 190:17–191:8; Def. Ex. 2 at 56. When asked whether the time to nail down emotional distress damages is months after filing the Complaint, Attorney McKenzie testified that she meant "to nail down the specifics of the emotional distress beyond the general allegation". Trial Tr. 191:9–24.

38.     The Defendants' second witness was Attorney Harman. When asked whether any document provided in discovery showed the Frangos's "talking about emotional distress" or their attorneys billing for discussions with them about their emotional distress, Attorney Harman testified that she could not remember. *Id.* 193:14–194:16. To Attorney Harman's knowledge, Attorney Gottlieb never spoke with Mrs. Frangos about this adversary proceeding prior to filing. *Id.* 196:21–197:5.

39.     The Defendants' third witness was Attorney Flagg. He testified that he did not recall demanding Mr. Frangos to appear for trial, and that didn't make sense for him to make that

demand because he would always prefer his opponents to not show up. *Id.* 221:24–222:8. Attorney Flagg's statement that he would read Mr. Frangos's deposition into the record if he did not appear was because, until the Superior Court informed the parties that the May 31, 2024 trial would go forward, he "assumed we weren't going to go forward with the trial" meaning Attorney Flagg was scrambling to prepare. *Id.* 222:9–223:8.

40.     Attorney Flagg then corrected Attorney Marconi, testifying that he did not file a motion to continue the trial on May 31, 2024; rather, he asked Attorney Marconi to go with him to "talk to the Judge" because he wanted "to get this thing continued because if the Judge is wrong about whether the stay applies, nobody cares" while the consequences for Attorney Flagg being wrong could be significant. *Id.* 223:9–224:6. Attorney Flagg did not believe he would be able to get a motion to continue on file, even if he filed it the previous day, because such a motion would not immediately get to Judge Ruoff. *Id.* 223:20–224:5.

## III.     DISCUSSION

### A.     <u>The Defendants Did Not Commit a Violation of the Automatic Stay</u>

41.     The Plaintiffs' first claim is that the Defendants violated the automatic stay by appearing at the May 31, 2024 hearing in the State Court Action and arguing that the trial should move forward, despite having knowledge of the Bankruptcy Case. The automatic stay prohibits, among other things, continuing judicial proceedings against the debtor. 11 U.S.C. § 362(a)(1). To prevail on a stay violation claim, the Plaintiffs must show by a preponderance of the evidence: "(1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." *In re Slabicki*, 466 B.R. 572, 577–78 (B.A.P. 1st Cir. 2012) (citation omitted). The Court concludes that the Plaintiffs failed to show that the Defendants violated the automatic stay.

42.     The "automatic stay is extremely broad in scope and should apply to almost any type of formal or informal action against the debtor or the property of the estate". *Id.* (citation modified). That said, it "does not prohibit all communication or actions by a creditor to a debtor." *In re Knowles*, 442 B.R. 150, 160 (B.A.P. 1st Cir. 2011) (citation omitted). "Mere requests" do not violate the stay if they are not "coercive or harassing" and actions only violate the stay if they "immediately or potentially threaten the debtor's possession of its property," requiring the debtor "to take affirmative acts to protect its interest." *Id.* (citation modified).

43.     From the filing of the Bankruptcy Case on the morning of May 30, 2024 to Judge Ruoff continuing the trial on the morning of May 31, 2024, there are at most three instances where the Defendants' actions could implicate the automatic stay: (1) when Attorney Flagg gave a position regarding the notice of bankruptcy to Superior Court staff by e-mail the afternoon of March 30, 2024; (2) during a conference call when Attorney Flagg indicated that he would have to subpoena Mr. Frangos or read Mr. Frangos's deposition into the record if the March 31, 2024 State Court Action trial went forward and Mr. Frangos did not appear; and (3) when Attorney Flagg indicated to Judge Ruoff at the May 31, 2024 hearing that he was ready to go forward with trial.

44.     Regarding the first action, Attorney Flagg did not violate the automatic stay because there is no evidence to suggest that he took any action against Mr. Frangos. When Attorney McKenzie sent Attorney Flagg a text message of the notice of the Bankruptcy Case on the morning of May 30, 2024, Attorney Flagg asked if she would assent to relief from stay, indicating he understood the stay at least protected Mr. Frangos. Pl. Ex. 1. Later, at 1:43 p.m., Ms. Touma stated that because the notice of bankruptcy "only pertains to one Defendant" the May 31, 2024 trial remained on the docket as to Mrs. Frangos and the Trust. Pl. Ex. 2 at 1. At

3:02 and 3:12 p.m., Attorneys McKenzie and Harman each replied that the co-debtor stay applied to the non-debtor defendants. Pl. Exs. 2 & 3. Attorney Flagg responded, but the substance of his response is not in the record.[4] But given Ms. Touma already confirmed the notice of bankruptcy was solely for Mr. Frangos, the Court can at least infer that, whatever Attorney Flagg's position was, it only concerned whether the automatic stay applied to Mrs. Frangos and the Trust, the non-debtor Defendants. *See* Ex. 2; ECF No. 29 at 2–3.

45.     Regarding the second action, Attorney Flagg did not violate the automatic stay. While Mr. Flagg was described as "exasperated" or "pushy," this is not enough to violate the automatic stay. Trial Tr. 28:8–11, 70:5–20. In order to violate the automatic stay, his statements needed to advance the proceeding somehow, and specifically for Mr. Frangos. *See In re Witkowski*, 523 B.R. 291, 299 (B.A.P. 1st Cir. 2014) (collecting cases interpreting the term "continuation" in 11 U.S.C. § 362(a)(1), *abrogated on other grounds by In re Smith*, 910 F.3d 576 (1st Cir. 2018). Nothing in the record suggests that Attorney Flagg drafted a trial subpoena for Mr. Frangos, let alone served it.[5] Attorney Flagg did not read Mr. Frangos's deposition into the record either. *See* ECF No.33. Attorney Flagg did not cause the May 31, 2024 hearing to go forward because Ms. Touma had already informed the parties that the Superior Court intended to proceed with the matter. Pl. Ex. 2.; ECF No. 29 at 3. Attorney Flagg took no actions against Mr. Frangos that advanced the Superior Court Action.

46.     Even if the Court read 11 U.S.C. § 362(a)(1) expansively to include "coercive or harassing" statements that fail to advance a proceeding but "potentially threaten the debtor's

---

[4] Plaintiffs' counsel indicated that they wanted to introduce Attorney Flagg's response into evidence, but never did so. Trial Tr. 104:12–106:16.
[5] A trial subpoena issued against Mr. Frangos solely for testimony regarding Mrs. Frangos and the Trust would also not have violated 11 U.S.C. § 362(a)(1). *See In re Kenoyer*, 489 B.R. 103, 113–117 (Bankr. N.D. Cal.) (citing *In re Miller*, 262 B.R. 499 (B.A.P. 9th Cir. 2001)) (finding no continuation of an action against a debtor the debtor received a trial subpoena "for purposes other than to continue the prosecution of [] claims against Debtor").

possession of its property," there is still no violation. *Knowles*, 442 B.R. at 160 (citation modified). The "coerciveness of a statement" is measured by "the immediateness of any threatened action and the context in which a statement is made." *In re Diamond*, 346 F.3d 224, 227 (1st Cir. 2003) (citation omitted). The record does not indicate that anyone ever relayed Attorney Flagg's comments to Mr. Frangos, meaning that he was not coerced or harassed by them personally. While a threatened subpoena could coerce or harass a debtor by requiring them to possibly incur attorneys' fees in drafting a preemptive response such as a motion to quash, there is no evidence that the Plaintiffs started or even considered such a motion. Mr. Frangos's appearance in the Superior Court parking lot—not even the courtroom—was not caused by Attorney Flagg's statements either; Mr. Frangos had to drive Mrs. Frangos, whose appearance was required based on the message from the Superior Court indicating that the hearing would go forward and not by Attorney Flagg's actions. Trial Tr. 118:24–119:8; Pl. Ex. 2; ECF No. 29 at 3. The Plaintiffs' lack of reaction to Attorney Flagg's statements, coupled with the Superior Court already requiring the parties' appearance the next day, convinces the Court that Attorney Flagg did not violate the automatic stay by raising the possibility of subpoenaing Mr. Frangos' appearance at the next day's trial.

47.    The Court also notes that there is conflicting testimony regarding whether Attorney Flagg in fact demanded that Mr. Frangos appear on May 31, 2024, or that Attorney Flagg would subpoena him. In Attorney Flagg's words: "I did not demand that he appear. I don't recall now . . . . I don't recall saying that and Attorney Harman doesn't recall some of the things in her notes about that conversation either. But it doesn't make sense to me that I would demand that he appear for trial because I don't want him there." Trial Tr. 221:24–222:8. That is, Attorney Flagg would not have wanted Mr. Frangos to appear because that would benefit his case. The

Court does not doubt that Attorneys Harman and McKenzie believe Attorney Flagg made these statements, but it is unable to conclude by the preponderance of evidence that he did.

48.     The third action similarly fails to show a violation of the automatic stay. While Attorney Flagg stated on the record that he was "prepared to go forward," Pl. Ex. 16 10:2, he continued to say that he had "no intention of violating the automatic stay" and did not want either himself or his client BONY to violate the automatic stay. *Id.* 10:2–5. More specifically, he stated: "I'm not proceeding against anything having to do with Mr. Frangos. He would be a witness." *Id.* 10:8–10. Judge Ruoff made clear that he "was willing to proceed with the trial on the merits on today's date but" that Attorney Flagg, "requested a short continuance" to seek relief from stay in the bankruptcy court, "out of an abundance of caution". *Id.* 22:17–23:2. The May 31, 2024 trial may have proceeded *but for* Attorney Flagg's intervention.

49.     The Court thus concludes that the Plaintiffs failed to prove by a preponderance of the evidence that the Defendants violated the automatic stay under 11 U.S.C. § 362(a)(1).

### B.     The Defendants Did Not Commit a Violation of the Codebtor Stay

50.     The Plaintiffs' second claim is that the Defendants violated the 11 U.S.C. § 1301 codebtor stay. The codebtor stay provides that "a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt". 11 U.S.C. § 1301(a). To prove a violation of the codebtor stay: "(1) there must be an action to collect a consumer debt; (2) the consumer debt must be one owed by the debtor; and (3) the action to collect must be against an individual that is liable on such debt with the debtor." *Alvarez Velez*, 617 B.R. 158, 166 (B.A.P. 1st Cir. 2020) (citations omitted). The codebtor stay exists "to protect the debtor, not the co-debtor." *In re Brooks*, 340 B.R. 648, 655 (Bankr. D. Me. 2006) (citations omitted).

51.     In the Court's view, the only potential codebtor stay violations in the record are the same three instances discussed above: (1) when Attorney Flagg gave a position regarding the notice of bankruptcy to Superior Court staff by e-mail the afternoon of March 30, 2024; (2) during a conference call when Attorney Flagg indicated that he would have to subpoena Mr. Frangos or read Mr. Frangos's deposition into the record if the March 31, 2024 State Court Action trial went forward and Mr. Frangos did not appear; and (3) when Attorney Flagg indicated to Judge Ruoff at the May 31, 2024 hearing that he was ready to go forward with trial.

52.     Attorney Flagg did not violate the codebtor stay in the first action because the Superior Court already decided to hold the May 31, 2024 hearing, notwithstanding the filing of the Bankruptcy Case. Ms. Touma informed the parties at 1:43 p.m. on May 30, 2024 that, "I noticed that [the Notice of Bankruptcy] only pertains to one Defendant. Therefore, the Bench Trials remain on the docket tomorrow for Defendants [Mrs. Frangos and the Trust]." Pl. Ex. 2. Ms. Touma reiterated that decision after Mr. Flagg made his position known. ECF No. 29 at 3. That is, Attorney Flagg took no affirmative action in the State Court Action to advance the trial.

53.     The Plaintiffs appear to argue, at least implicitly, that any statement of position regarding whether the automatic stay or codebtor stay applies to a proceeding is itself a violation if made outside of bankruptcy court. This cannot be squared with the fact that state courts have "concurrent jurisdiction" with the bankruptcy court to decide whether the automatic stay applies to a given proceeding. *See In re Angelo*, 480 B.R. 70, 83 (Bankr. D. Mass. 2012); *In re Bagley*, -- B.R. --, 2025 WL 3030022, at *13 (Bankr. D.R.I. Oct. 29, 2025) (citation omitted); 3 Collier on Bankruptcy ¶ 362.08 (Resnick & Sommer eds., 16th ed.) ("A nonbankruptcy court may determine the applicability of the automatic stay with respect to litigation pending before it, but the bankruptcy court is not bound by that determination." (collecting cases)); 28 U.S.C.

§ 1334(b) (granting "original but *not exclusive* jurisdiction" over civil proceedings arising under the Bankruptcy Code (emphasis added)). While Attorney Flagg had a duty to inform the Superior Court of the Bankruptcy Case if he knew it was unaware, *In re Soares*, 107 F.3d 969, 978 (1st Cir. 1997), the Plaintiffs provide no authority to suggest that he was required to accept the Defendants' theory of the codebtor stay before the Superior Court. Opposing attorneys should be able to engage in post-petition discussions with each other about whether the automatic stay applies to a matter, provided they do not engage in "coercive or harassing" tactics. *See Knowles*, 442 B.R. at 160 (B.A.P. 1st Cir. 2011).

54.     Attorney Flagg also did not violate the codebtor stay in the second action. As discussed above, Attorney Flagg never issued a subpoena or read Mr. Frangos's testimony into the record. The record is at least unclear whether Attorney Flagg even said he would do so. Attorney Flagg does not remember making these statements, and presented a compelling explanation as to why it was not in his interest to do so beyond issues regarding the automatic stay: if the State Court Action went forward on May 31, 2024, Mr. Frangos' failure to appear meant that Attorney Flagg could use deposition testimony as he wished, with no opportunity for Mr. Frangos to respond. Trial Tr. 221:24–222:8 ("[I]f I don't have an opponent show up, I'm the happiest guy on the planet."). And if Attorney Flagg in fact made those statements, they did not compel Mrs. Frangos's appearance; instead, she appeared because of the decision of the Superior Court to hold the May 31, 2024 hearing. Simply put, however "exasperated" or "pushy" Attorney Flagg was towards Attorneys Harman and McKenzie during the conference call, the Plaintiffs presented no evidence that his words harassed or coerced the Plaintiffs into doing anything. *See In re Sherkanowski*, 2000 WL 33679425, at *7 (Bankr. D.N.H. Aug. 15, 2000) ("The respite is

not from communications with creditors, but from the threat of immediate action by creditors, such as a foreclosure or lawsuit.").

55.     Finally, Attorney Flagg did not violate the codebtor stay in the third instance. While he argued that the codebtor stay did not apply and made clear that he was prepared to go forward with trial on May 31, 2024, the Superior Court had jurisdiction to determine whether the codebtor stay applied to the State Court Action. At the hearing, Attorney Flagg persuaded the Superior Court not to exercise that jurisdiction in favor of allowing the bankruptcy court to decide the issue. Attorney Flagg took no action on May 31, 2024 that advanced the State Court Action, or attempted to collect a debt against Mrs. Frangos. For these reasons, this Court finds that the Defendants did not violate the codebtor stay.

### C.     The Plaintiffs Did Not Suffer Damages from the Defendants' Purported Violations of the Automatic Stay and Codebtor Stay

56.     While the Court has concluded that the Plaintiffs failed to prove a violation of the automatic stay or codebtor stay occurred and are thus not entitled to damages, the Court finds it prudent to address the alleged damages in this case. In doing so, this Court concludes that even if it had found that a violation occurred, the Plaintiffs did not successfully demonstrate that they suffered any damages.

57.     Section 362(k)(1) "provides that an individual injured by any willful violation of a *stay provided by this section* shall recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages." *In re Duby*, 451 B.R. 664, 670 (B.A.P. 1st Cir. 2011) (citation modified) (emphasis added). Notably, the 11 U.S.C. § 1301 codebtor stay contains no similar provision. *See In re Karmi*, 638 B.R. 804, 819 (Bankr. D. Kan. 2022) (noting that § 362(k) only allows damages for violations of § 362, not § 1301); *Harris v. Margaretten & Co.*, 100 F.3d 950 (4th Cir. 1996) (denying attorney fees under § 1301 "in the

23

absence of a statutory authorization" (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247–255 (1975)).

58.     Some courts have nevertheless awarded damages for codebtor stay violations, or at least found them permissible, on a civil contempt theory. *See, e.g.*, *In re Burkey*, 2012 WL 5959991, at *5 (Bankr. N.D.N.Y. Nov. 28, 2012) (implying contempt of court is a basis for awarding damages under § 1301, but finding insufficient evidence to do so); *In re Tucker*, 2017 WL 2773523, at *3 (Bankr. N.D. Iowa June 26, 2017) (awarding attorney fees under § 105(a) because § 1301 provides for none). The Court declines to do so for two reasons.

59.     First, 11 U.S.C. § 105(a) cannot be used in a manner "inconsistent with any other Code provision" or to "alter other substantive rights set forth in the Code." *In re Nosek*, 544 F.3d 34, 44 (1st Cir. 2008) (citations omitted). The Court believes it would be inconsistent with the Bankruptcy Code to authorize damages for violations of the codebtor stay when Congress chose not to include a provision like 11 U.S.C. § 362(k), despite knowing how to do so. That is, where a creditor violates only the codebtor stay, and *not* the automatic stay, the Court does not think it appropriate to award damages where the Bankruptcy Code expressly allows damages for the latter, but not the former.

60.     Second, the Plaintiffs fail to prove that the Defendants engaged in civil contempt, which requires finding that "(1) the alleged contemnor had notice that it was covered by the order; (2) the order was clear and unambiguous; (3) the contemnor had the ability to comply with the order; and (4) the order was in fact violated." *Escamilla v. Dyck-O'Neal, Inc.*, 661 B.R. 676, 691 (D. Mass. 2024) (citing *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005)). Substantial compliance is a defense to civil contempt sanctions. *Morales Feliciano v. Rosello Gonzalez*, 124 F. Supp. 2d 774, 786 (D.P.R. 2000) (collecting cases). Where a party takes "all

reasonable steps within its power to insure compliance with" a court order, "technical or inadvertent violations of the order will not support a finding of contempt." *Id.* (citations omitted). In the Court's view, the Defendants' alleged violations of the codebtor stay are technical at worst. While Attorney Flagg may have argued in favor of the Superior Court proceeding with trial, he only did so *after* Ms. Touma made clear by e-mail that the May 31, 2024 hearing would go forward despite Mr. Frangos filing the Bankruptcy Case. Pl. Exs. 2 & 3; ECF No. 29 at 3. Attorney Flagg did not follow through on his statement that he would subpoena Mr. Frangos, if he made it at all, and they would have had to attend the May 31, 2024 hearing anyway, given the Superior Court made clear its intent to proceed if it concluded that the codebtor stay did not apply. Moreover, it was Attorney Flagg that ultimately persuaded the Superior Court to continue the trial so the Defendants could obtain relief from stay in bankruptcy court. That is, if any of Attorney Flagg's actions on May 30 and 31, 2024 violated the codebtor stay, he nevertheless substantially complied because his actions compelled no response from the Plaintiffs not already required by the Superior Court, and he ultimately prevented the State Court Action from going any further.

61.     As for the Plaintiffs' damages under 11 U.S.C. § 362(k), there are three categories: (1) emotional distress damages; (2) lost wages and travel expenses; (3) attorneys' fees; and (4) punitive damages. In the Court's view, the Plaintiffs are entitled to none. Starting with the Plaintiffs' alleged emotional distress, the First Circuit holds that "emotional damages qualify as 'actual damages' under" 11 U.S.C. § 362(k). *Fleet Mortg. Grp., Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999) (citations omitted). However, the Plaintiffs must provide "evidence supporting the award of a definite amount", and the Court concludes that they have provided "no tangible evidence" to support an award of emotional distress damages in this case. *See In re*

*Mosher*, 432 B.R. 472, 476–77 (Bankr. D.N.H. 2010) (quoting *Sherkanowski*, 2000 WL 33679425, at *7). Other than repeatedly stating he was "angry," Mr. Frangos' testimony gave the Court no basis to find emotional distress or award a definite amount of money for such distress. Mr. Frangos' deposition testimony also undercuts his claims to emotional distress, as Mr. Frangos has "been on the edge of death so many times" that he does not "worry about anything." Trial Tr. 140:15–141:7; Def. Ex. 2 at 44:23–45:3. The Court will not "speculat[e], guess or conjecture" whether Mr. Frangos suffered damages from emotional distress. *In re Heghmann*, 316 B.R. 395, 404 (B.A.P. 1st Cir. 2004) (citation omitted); *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002) ("hurt feelings, anger and frustration are part of life, and are not the types of emotional harm that could support an award of damages") (citations omitted). The Plaintiffs failed to offer any concrete evidence of any emotional distress damages.

62.     As for Mrs. Frangos, she testified that she was nervous on the May 31, 2024 hearing date. Trial Tr. 118:24–119:8. Mrs. Frangos's testimony revealed that her distress and anger were because she was "forced to actually go and sit in court while" Mr. Frangos "would just be sitting in the parking lot." *Id.* 162:3–6. Given that Mrs. Frangos was compelled to attend the hearing by the Superior Court, *not* Attorney Flagg, the Court sees no basis to hold Attorney Flagg liable for alleged emotional distress that he did not cause. *See Heghmann*, 316 B.R. at 404–05 (plaintiffs must "prove by a preponderance of the evidence that "they "suffered damages *as a result of the stay violation*." (emphasis added)). Any ongoing emotional distress caused by the State Court Action moving forward later cannot be attributed to any stay violation by Attorney Flagg, which ended at the latest with the conclusion of the May 31, 2024 hearing. The Court finds no basis in the record to award Mrs. Frangos emotional distress damages.

63.     The Plaintiffs also claim travel expenses and lost wages as damages. The Court will not award travel expenses, as Mrs. Frangos attended the May 31, 2024 hearing at the direction of her attorneys and the Superior Court, *not* Attorney Flagg. As for lost wages, Mrs. Frangos was unable to remember which, if any, of her three jobs she was scheduled to work on May 31, 2024, Trial Tr. 156:25–157:3, 20–24, preventing the Court from determining the amount of any lost wages. Mr. Frangos's calculated his lost wages by estimating the total value of his project divided by the number of days he thought the project should take to complete. The Court received no documentary evidence to corroborate his testimony that he earned $6,000 a day. This Court did not find his testimony credible in any regard. Moreover, Mr. Frangos could not remember whether he went back to work after the hearing on May 31, 2024: "Possibly I did. I just don't recall." Trial Tr. 153:8–19. Mr. Frangos's testimony is also inconsistent with his sworn Schedule I, which indicates that he receives only $1,000 per month from his business. Bankruptcy Case ECF No. 21 at 26. To date, Mr. Frangos has made no effort to amend Schedule I, despite the Court noting this inconsistency. Trial Tr. 241:6–21. The Plaintiffs either fail to show they incurred travel expenses and lost wages, or their testimony is so inconsistent with the record that the Court will discredit their testimony.

64.     As for attorneys' fees, the Court received as evidence invoices indicating that the Plaintiffs have incurred approximately $79,250 in fees litigating this case. Def. Ex. 2 at 31–32, 83–90, 93–99. Testimony at trial indicated that the Plaintiffs' attorneys' fees may have reached $125,000 as of September 2025, Trial Tr. 46:4–21, meaning that fees incurred to date are likely higher. But as discussed above, any stay violation by the Defendants ended, at the latest, when the May 31, 2024 hearing concluded. Section 362(k)'s purpose in awarding damages for stay violations is to "return the debtor to the status quo". *Duby*, 451 B.R. at 677. Returning to the

status quo of course includes determining and enforcing sanctions under 11 U.S.C. § 362(k). *Sherkanowski*, 2000 WL 33679425, at *8. The Court has already concluded that the Plaintiffs suffered no other damages from the Defendants' purported stay violations. The pre-Bankruptcy Case status quo was achieved the moment the Superior Court concluded the May 31, 2024 hearing at Attorney Flagg's request.

65.     The Plaintiffs have requested that this Court award them punitive damages. Regarding punitive damages, they are only "awarded when the defendant's conduct is "malicious, wanton, or oppressive", as "necessary to punish and deter the defendant's conduct." *Mosher*, 432 B.R. at 477 (citing *Romano v. U-Haul Int'l*, 233 F.3d 655, 672 (1st Cir. 2000)) (internal quotations omitted). Put differently, a stay violation must involve "egregious, intentional misconduct" to merit punitive damages. *Heghmann*, 316 B.R. at 405–06 (citation modified). The Court finds no such conduct based on the record in this case. At worst, Attorney Flagg was rude to Attorneys McKenzie and Harman during a conference call after learning less than an hour before that he had to prepare for trial the next morning. An emotional reaction to that situation is understandable under the circumstances.

66.     Finally, it is worth nothing the following: The alleged violation of the automatic stay stopped at the conclusion of the Superior Court hearing at 10:32 A.M. on Friday May 31, 2024. Two business days later, Attorney Flagg filed a motion for relief in the Bankruptcy Case seeking permission to proceed in the Superior Court on an expedited basis. Bankruptcy Case ECF Nos. 12 – 13. Yet, the Plaintiffs incurred tens of thousands of dollars in attorneys' fees after that in litigating this action two months after the violation had stopped and after Attorney Flagg obtained relief from this Court to proceed with the State Court Action.

67.    Additionally, the Court notes a troubling fact elicited at trial: the Plaintiffs were working on a draft complaint against the Defendants on May 31, 2024, the very day that any violation of the stay in this case ceased. *See* Def. Ex. 2 at 73. But on that date, Attorney Flagg had already returned the State Court Action to the status quo before Mr. Frangos filed the Bankruptcy Case by persuading the Superior Court to stay the trial. Given the Plaintiffs' total failure to prove that they suffered any damages, the timing of the Plaintiffs' decision to prepare litigation against the Defendants raises substantial questions regarding the Plaintiffs' motives in filing this case.

## V.    CONCLUSION

Because the preponderance of evidence presented in this case proves that the Defendants did not violate the 11 U.S.C. § 362(a)(1) automatic stay or the 11 U.S.C. § 1301(a) codebtor stay, the Court orders that:

1.    The Defendants are entitled to a judgment in their favor and against the Plaintiffs;

2.    The Court shall enter a separate judgment promptly after entry of this memorandum opinion.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.


Date: February 13, 2026                    /s/ Kimberly Bacher
                                           Kimberly Bacher
                                           Chief Bankruptcy Judge